BARTLETT v. JENKINS.

1. MALICIOUS PROSECUTION—EVIDENCE — OPINION OF MAGISTRATE—MATERIALITY.

In an action for malicious prosecution, the magistrate called to prove the issuance of the warrant should not be permitted to state on cross-examination whether at the time under the statement of defendant he considered that there was probable cause for making the complaint.

2. SAME—ADMISSIONS OF PLAINTIFF—MATERIALITY.

Testimony that, upon being brought into court, plaintiff scolded and complained about being arrested, made a statement about settling the matter, and offered to pay for the wheat which he was accused of stealing, is immaterial, such testimony being as consistent with innocence as guilt.

3. SAME—RELATIONS OF PARTIES.

A statement by plaintiff on direct examination that he had had dealings with defendant and had owed him, the prosecution being for stealing wheat which plaintiff claims to have bought, if improperly admitted, is harmless.

4. SAME—TRANSACTION ON WHICH PROSECUTION WAS BASED.

Testimony of a witness, who was present, showing what occurred when plaintiff obtained the wheat which defendant prosecuted him for stealing, is competent, as throwing light on plaintiff's innocence, and as bearing on the state of facts necessary to be known by counsel who advised as to the prosecution, if it should appear that such facts came to the knowledge of defendant.

5. WITNESSES—EXAMINATION—QUESTIONS—PREJUDICE — CURE BY ANSWER.

No prejudice results from the asking of questions which either are not answered or else are so answered as to support the theory of the party complaining.

6. MALICIOUS PROSECUTION — STATEMENTS OF DEFENDANT — ADMISSIBILITY.

Defendant, in an action for malicious prosecution of a complaint for stealing wheat, may be asked on cross-examination if he did not state to the prosecuting attorney, before the prosecution was dismissed, that plaintiff did talk to him

about the wheat, it being plaintiff's claim that he took the wheat by authority of defendant, intending to pay for it.

7. SAME — DEFENSE — PROBABLE CAUSE — ADVICE OF COUNSEL — TRANSACTIONS WITH COUNSEL.

The defense being probable cause, based on advice of counsel, defendant may be asked on cross-examination whether he paid his counsel, and the time and amount, and the answers may go to the jury.

8. SAME—EVIDENCE—CONCLUSIONS—ADMISSIBILITY.

A question asked of defendant on cross-examination whether he would have made the complaint if plaintiff had come and settled with him is not objectionable as calling for a conclusion.

9. WITNESSES—EXAMINATION—STRIKING OUT—CURE OF ERROR.

The striking out of a part of an answer of a witness is immaterial where the same statement is immediately made on redirect in fuller terms.

10. MALICIOUS PROSECUTION—EVIDENCE — INTERVIEW WITH PROSECUTOR.

The details of an interview between defendant and the prosecuting attorney, and his conduct in relation to the action of the prosecutor and justice in dismissing the case, drawn from defendant on cross-examination, are admissible on the questions of malice and good faith.

11. SAME—INSTRUCTIONS—ASSUMING FACTS.

An assumption in the instructions that the plaintiff was discharged by the magistrate is not erroneous where the fact is established by undisputed proof.

12. SAVING QUESTIONS FOR REVIEW — INSTRUCTIONS — EXCEPTIONS —NECESSITY.

Error cannot be predicated upon a charge to which no exception was taken, nor upon failure to give a more specific charge in relation to a matter as to which no request was made.

Error to Calhoun; Adams, J., presiding. Submitted October 16, 1907. (Docket No. 110.) Decided January 31, 1908.

Case by Byron E. Bartlett against George W. Jenkins for malicious prosecution. There was judgment for plaintiff, and defendant brings error. Affirmed.

*H. W. Cavanagh*, for appellant.

*M. H. Nichols*, for appellee.

Hooker, J.   The parties to this action are farmers and neighbors.   During the absence from home of the defendant the plaintiff went to his farm and obtained from the tenant eight bushels of wheat for seed.   The plaintiff testified on the trial that he had previously spoken to the defendant about the possibility of his wanting some wheat, and that defendant consented to his having it; that he did not intend to steal it; never denied getting it; expected and promised to pay for it.   The defendant denied that he had previous talk with the plaintiff about the wheat, and testified that the first he knew about the matter was when he was informed by his tenant and another person, both of whom were present and aided in getting the wheat for plaintiff after plaintiff had obtained the key to the granary from defendant's wife, to whom he returned it afterwards.   There was testimony that tended to show some ill feeling between the parties over a debt owing by plaintiff's step-father, at the time of his death, which plaintiff, who cared for him during his illness and to whom deceased's property was bequeathed, promised to pay, but did not pay promptly, which led defendant to institute probate proceedings.   This ill feeling, if any existed, was not very clearly proved, but was an element in the cause which was for the jury to consider.

A short time after plaintiff obtained the wheat, defendant made a complaint for larceny and caused plaintiff's arrest.   The complaint was made under alleged advice of counsel and the magistrate after a statement which defendant claims included all the facts in his possession, and after counsel had talked with the prosecuting attorney. After one or more adjournments of the case the plaintiff was discharged by the justice after a jury had been summoned to try him, and before they were sworn.   This appears to have been brought about by defendant's brother-in-law, who paid the costs himself, both plaintiff and de-

fendant refusing to pay anything, and possibly by the advice of, certainly with the acquiescence of, the prosecuting attorney. The plaintiff afterwards brought this action for malicious prosecution and recovered a verdict and judgment for $50, and defendant has appealed.

There are several assignments of error which we will discuss. 1 and 2. The plaintiff called Mr. Breakey, the justice who issued the warrant, to prove the issue of the warrant upon the written complaint of the defendant, and the docket entries. He was cross-examined at length as to the conversation at the time the complaint was made and was asked whether, at that time, under the statement of Mr. Jenkins (defendant) to him, he considered that there was probable cause for making the complaint. The answer was excluded. It was immaterial.

3. On cross-examination of the justice, he stated that after plaintiff's arrest, and on the 8th of December, he did not think—

"That Mr. Bartlett at any time disputed that he had the wheat. I do not know what he said. He scolded about being arrested and complained about it but I cannot recollect. I think he did make a statement about settling it up. He made a proposition about paying for the wheat when he was brought into court; he offered to pay for it and I think he made the proposition first to Mr. Jenkins. I think he made a tender of the money, either he or Mr. Nichols did.

" *Q.* What did Mr. Jenkins say ?

" *A.* I wish to say this here, that I think this occurred on the 8th of December.

" *Q.* Not on the first day ?

" *A.* No, sir; or on the 11th. I think it occurred on the 8th.

" *Q.* Now do you recollect anything farther that Mr. Bartlett said at that time or on the 8th ?

" *The Court:* I think you may strike out what he said there on the 8th. The jury may disregard it."

If this testimony was of importance, it was upon the theory that it tended to show an admission of guilt. Had plaintiff admitted that he was guilty of larceny the fact

would have been admissible, and if the language quoted could be said to fairly imply or justify an inference of guilt it would have been proper testimony, but there is nothing indicative of guilt in it. *First*, the justice did not remember his language. He scolded and complained about, being arrested and the witness thought he made a statement about settling it up. What kind of a statement? It may have been an offer or a refusal to settle it up. He offered to pay for the wheat but that was not an admission of guilt. All of this testimony was as consistent with innocence as guilt. We think, therefore, that the defendant suffered no injury from the ruling.

4. On the direct examination of the plaintiff the following dialogue occurred:

"*Q.* I think you said that you had had some dealings with Mr. Jenkins previous to this time?

"*A.* Yes.

"*Q.* Had you any dealings with him, I mean purchase anything of him or owed him anything?

"*A.* Yes I have owed him and had things from him.

"*Mr. Cavanagh:* I object to this and move to strike it out as immaterial.

"*The Court:* It may stand."

This testimony was properly admitted but were it otherwise it was harmless.

5. Eli Moor, a witness who was present, was called to show what occurred when plaintiff obtained the wheat. The testimony was competent, throwing much light upon the question of plaintiff's innocence, and bearing on the state of facts necessary to be known by counsel who advised in relation to a prosecution, if it should be made to appear that they came to the knowledge of the defendant.

6. This assignment is within the rule applied to No. 5, and defendant's counsel appear to concede that it was not harmful.

7. It is contended that the court erred in refusing to take the case from the jury at the conclusion of plaintiff's testimony on the ground that malice had not been shown

and that probable cause had. In our opinion there was evidence sufficient to send both questions to the jury and the court did not err in his ruling.

8. The defendant, in his direct examination, denied that plaintiff had talked to him about purchasing some wheat. On cross-examination he was asked if he did not first tell Mr. Miller, assistant prosecuting attorney, at Homer, on the 11th of December, that plaintiff had never said anything to him about the wheat, and if Miller did not then say that had he known that he had had any talk with Bartlett about the wheat and about paying for it, he would not have indorsed the complaint, and afterwards ask if defendant did not, before the case was dismissed by the justice, say to Miller that plaintiff did talk with him about the wheat. The first question was answered no, and the second was not answered, so that defendant was not injured by either. The last was answered yes, and was plainly material testimony.

9, 10, 11, 12. Defendant sought to prove probable cause, based on advice of counsel. It was proper on cross-examination to ask him whether he paid him, the time and amount, and to allow the answers to go to the jury.

13, 14. There was testimony that defendant and his wife called upon plaintiff one Sunday and did not find any one at home. Defendant was asked whether, if Mr. Bartlett (plaintiff) had remained at home that Sunday and entertained defendant and his wife, instead of going away, he would have made the complaint. He answered that he thought he should unless it was otherwise settled. He was then asked:

"What do you mean by otherwise settled?

"*A.* If he could have come to terms and made peace with me, there wouldn't have been any complaint, but as he didn't—that has no influence with me, that day, because we parted on good terms that day as far as that is concerned—we had no words.

"*Q.* The reason that you did not make this complaint was because he didn't come to you and make peace with you, was it?

"*A.* I waited and gave him—

"*Q.* Just wait. I asked you a question. (Question read.)

"*A.* Well, now, in what respect are you going into that, that is what I want to know?

"*Q.* You answer the question and we will get to the rest of it later.

"*Mr. Cavanagh:* I object to it as immaterial, irrelevant and incompetent. It also calls for a conclusion from the witness.

"*The Court:* Answer.

"*Mr. Cavanagh:* Exception.

"*A.* Well, I couldn't give an answer to that by yes or no, because I could not tell what I would have done."

We find no error in either of these rulings.

15. Mr. Cavanagh was sworn for defendant. He stated that he was an attorney at law and advised the defendant upon the subject of making this complaint. On cross-examination he was asked:

"Did he tell you there was any personal malice on his part toward Mr. Bartlett?

"*A.* No, sir, he didn't, and he didn't manifest any or show any."

The latter part of the answer was struck out, but, as the witness immediately restated it in even fuller terms on redirect, there is no occasion to consider the question.

16. Counsel say that this error is similar to the 8th. It related to an interview between the assistant prosecuting attorney and defendant on December 11th, and his conduct in relation to the action of the prosecutor and justice in dismissing the case. It was a competent examination in relation to the question of malice and good faith.

17. Complaint is made of the statement on the charge that the plaintiff was discharged by the magistrate. The learned judge had stated the elements necessary to a charge of malicious prosecution and said that one was that the prosecution complained of must have been ended by plaintiff's acquittal or discharge. He said such element was established. We think that it was, by undisputed proof.

18. It is urged that the language of the judge in rela-

tion to the defendant's discharge was prejudicial because it left them to infer that plaintiff could not be guilty of the charge.   Counsel did not request a charge upon this subject and there is no reason to think that the jury were misled.   Indeed the testimony was such that had the court advised the jury that the evidence failed to prove guilt we should hesitate to reverse the cause for that reason.

19.  This was considered with the 15th assignment.

20.  Counsel says that the court should have stated a hypothetical case as a basis for the jury to act upon in delivering to them his charge.   He relies upon *Slater* v. *Walter*, 148 Mich. 650.   No exception was taken to the charge, and no request was made in this connection. Moreover, the judge explained the rules relating to probable cause in a way that made it easy to apply them to this case.   This is no ground for reversal.

21, 22.  This was a proper case to submit to the jury, and the court did not err in omitting to direct a verdict for defendant.

The judgment is affirmed.

OSTRANDER, MOORE, CARPENTER, and McALVAY, JJ., concurred.